**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

Charm Hospitality, LLC,

               Plaintiff,

    v.

Nohayia Javed, et al.,

               Defendants.

Case No. 2:25-cv-00282-RFB-BNW

**ORDER**

Before this Court are three motions to quash by Charm. ECF Nos. 74, 94, 95. Charm seeks to quash subpoenas duces tecum to Kung & Brown Law Firm and Galaxy Management Company, LLC (ECF No. 74) as well as a subpoena to testify at a deposition to Galaxy (ECF No. 94) and Kung & Brown (ECF No. 95). Javed opposed at ECF Nos. 75, 99, and 100, and Charm replied at ECF Nos. 77, 102, and 133. The arguments in each motion often overlap because the subpoenas encompass similar groups of information, so this Court decides the motions together. The parties and Court are familiar with the arguments and facts of this case. This Court will not repeat them but incorporates them as necessary and relevant to its order. For the reasons discussed below, this Court grants in part and denies in part the motion to quash the subpoenas duces tecum to Galaxy and Kung and Brown, grants in part and denies in part the motion to quash the subpoena to testify at a deposition to Galaxy, and grants the motion to quash the subpoena to testify to Kung and Brown.

**I.    DISCUSSION**

    **A.  Legal Standard**

Federal Rule of Civil Procedure 26(b)(1) provides for broad and liberal discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Id.* The court may limit discovery if it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . [or] the proposed discovery is outside the

scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i–iii). Further, a court may limit discovery via Rule 26(c), which permits the court to issue a protective order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense when the party establishes good cause. When the discovery at issue is a subpoena on a nonparty, Rule 45 governs. "It is well established that the scope of discovery under a subpoena issued pursuant to Rule 45 is the same as the scope of discovery allowed under Rule 26(b)(1)." *Painters Joint Committee v. Employee Painters Trust Health & Welfare Fund*, No. 2:10-cv-01385-JCM-PAL, 2011 WL 4573349, at \*5 (D. Nev. Sept. 29, 2011).

Federal Rule of Civil Procedure 45(d)(3) provides that a court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii) and (iv). The burden of proving that a subpoena imposes an undue burden or requires disclosure of confidential information is on the person seeking to have it quashed. *Green v. Baca*, 226 F.R.D. 624, 653 (C.D. Cal. 2005) (stating that the burden of persuasion on a motion to quash a subpoena is borne by the movant); *Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 698–700 (D. Nev. 1994). However, the party issuing the subpoena must demonstrate, in turn, that the information sought is relevant and material to the allegations and claims at issue in the proceedings. *Green*, 226 F.R.D. at 654. In all controverted cases, it is up to the court to strike a balance between the degree of relevance of the requested material, the severity of the burden on the subpoenaed person or entity, and the utility of the protective mechanisms provided by the Federal Rules. 9A Fed. Prac. & Proc. Civ. § 2459 (3d ed. 2013).

**B. Charm lacks standing to move to quash on relevance grounds under Rule 45.**

"[A] party lacks standing under Fed. R. Civ. P. 45[(d)(3)(A)] to challenge a subpoena issued to a nonparty unless the party claims a personal right or privilege with respect to the documents requested in the subpoena." *Compare G.K. Las Vegas Ltd. Partnership v. Simon Property Group, Inc.*, No. 2:04-cv-01199-DAE-GWF, 2007 WL 119148, at \*4 (D. Nev. Jan. 9, 2007) (cleaned up), *with In re Rhodes Companies*, LLC, 475 B.R. 733, 740 (D. Nev. Apr. 30, 2012) (declining to adopt the "personal right or privilege" standing rule for motion to quash

subpoenas). "A party's objection that the subpoena issued to the nonparty seeks irrelevant information or imposes an undue burden on the nonparty are not grounds on which a party has standing to move to quash a subpoena issued to a nonparty, especially where the nonparty, itself, has not objected." *G.K. Las Vegas Ltd. Partnership*, 2007 WL 119148, at *4 (cleaned up); *see also Fed. Trade Comm'n v. Grand Canyon Educ. Inc.*, No. 23-cv-02711-PHX-DWL, 2025 WL 721721, at *8 (D. Ariz. Mar. 6, 2025) (explaining that the prevailing view is that a non-recipient party cannot move to quash or modify a subpoena on relevance or proportionality grounds) (collecting cases). A party can, however, move for a protective order under Rule 26(c) regarding subpoenas issued to nonparties which seek irrelevant information. Fed. R. Civ. P. 26(c)(1).

In its first motion, Charm moves to quash the subpoena on privilege and relevance grounds. Charm does not address whether it has standing to move to quash the subpoena, nor does it move in the alternative for a protective order. This Court finds that Charm can move to quash the subpoenas under Rule 45 as to its privilege arguments only. Because Charm does not move for a protective order, this Court denies the portion of the motion seeking to quash the subpoena on relevance grounds.

In its second and third motions, Charm moves to quash the subpoenas on privilege and relevance grounds. Again, this Court finds that Charm can move to quash the subpoenas under Rule 45 as to its privilege—but not relevance—arguments. Charm moves for a protective order (in the alternative) based on its relevance arguments, so this Court will evaluate its relevance arguments under that legal framework.

### C. Miscellaneous arguments in Charm's first motion to quash.

#### 1. This Court will decide the first motion to quash even though the parties did not meet and confer.

Javed argues that Ms. Kung never contacted opposing counsel for a meet and confer before filing the first motion to quash. ECF No. 75 at 3. She argues that even if Rule 45 does not contain the same express requirement as Rule 37 to meet and confer, a conference was still required because Ms. Kung filed the motion to quash on behalf of Charm. *Id.* Charm does not address this argument in its reply.

Rule 37(a) provides that "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). Such motions must include "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." *Id.* First, Javed has not advanced any arguments supporting that Rule 37(a), which is titled "Motion for an Order Compelling Disclosure or Discovery," would include motions to quash subpoenas, which are governed by Rule 45(d). Second, the court always retains the discretion to dispense with the rules in the interests of justice. Local Rule IA 1-4. Here, the issues have been fully briefed, and it does not appear that a meet and confer at this stage will obviate the need to come before this Court. After considering Rule 1, this Court exercises its discretion to resolve this matter on the merits.

**2.   Javed provided adequate notice of the subpoena under Rule 45.**

Charm argues that Javed attempted to serve her subpoenas without first providing advance notice as required by Rule 45(a)(4). ECF No. 74 at 10. It argues that, to date, Javed has not filed any notices. *Id.* Javed argues that Kung & Brown and Galaxy avoided and delayed service. ECF No. 75 at 3–4. Charm responds that Javed violated Rule 45 because her attempted service took place minutes after filing her notice.

Rule 45 provides that if a "subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." Fed. R. Civ. P. 45(a)(4). Here, Javed filed a notice regarding the subpoena on August 27, 2025. ECF No. 71. Javed attempted to serve the subpoenas that same day but failed. *See* ECF No. 77 at 4. Ms. Kung signed an acceptance of service on September 8, 2025, reserving her right to challenge and object "to the same." ECF No. 75, Ex. E. A process server served Galaxy's statutory agent on September 12, 2025. ECF No. 75, Ex. G. Based on Javed's notice and *actual* service of the subpoena, there was no violation of Rule 45.

Even if this Court were to consider whether Javed violated Rule 45 based on her *attempted* service, its decision would be the same. While some courts insist on strict compliance with the notice requirement in Rule 45(a)(4), *see, e.g.*, *Bronson v. Henry Ford Health Sys.*, No.

2:15-cv-10111, 2016 WL 3197555, at *2 (E.D. Mich. June 9, 2016), others take a less literal approach and will not quash a subpoena where the opposing party has received notice of the subpoena in time to raise objections and has not been prejudiced by the violation, *see, e.g.*, *Bofi Federal Bank v. Erhart*, No. 15-cv-2353 BAS (NLS), 2016 WL 1644726, at *5 (S.D. Cal. Apr. 26, 2016) (service of notice of subpoena concurrently with service of the subpoena "fulfills the purpose of Rule 45(a)(4) to notify all parties of the subpoena"). This Court finds the latter approach more persuasive. Charm was not prejudiced by Javed's *attempted* concurrent service of the subpoenas on Kung & Brown and Galaxy. *See Littlefield v. NutriBullet, LLC*, No. CV 16-6894 MWF (SSX), 2018 WL 5264148, at *4–5 (C.D. Cal. Jan. 22, 2018). It therefore declines to quash the subpoenas on this basis.

### 3. The subpoenas can be modified to comply with Rule 45's 100-mile requirement.

Charm argues that the subpoenas must be quashed because they require compliance in Phoenix, Arizona, which is more than 100 miles away from Kung & Brown's place of business in Las Vegas, Nevada, and from Galaxy's place of business in Frisco, Texas. ECF No. 74 at 110–11. Defendant Javed responds that the subpoena can be modified to her counsel's offices in Las Vegas, Nevada, for Kung & Brown, and in Dallas, Texas, for Galaxy. ECF No. 75 at 16.

Rule 45(c) states that a "subpoena may command: (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person . . . ." Fed. R. Civ. P. 45(c)(2)(A). And Rule 45(d) allows courts to quash or modify subpoenas that require a person "to comply beyond the geographical limits specified in Rule 45(c)." Fed. R. Civ. P. 45(d)(3)(A). Based on the Court's research, both of Javed's proposed, new locations would be within 100 miles of Kung & Brown, and Galaxy, respectively. Accordingly, this Court will modify the subpoena to reflect these new places of production.

/ /

/ /

/ /

### D.  Privilege as to Galaxy and Kung and Brown.

This case is in federal court on diversity jurisdiction. *See* ECF No. 1. Federal Rule of Evidence 501 provides the relevant framework for determining whether the information sought in discovery is privileged. *Morrison v. Quest Diagnostics Inc.*, No. 2:14-cv-01207-RFB-PAL, 2016 WL 362346, at *5 (D. Nev. Jan. 27, 2016). "[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. So, Nevada state law of privilege applies.

Under Nevada law, an attorney-client relationship is formed "when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance." *Todd v. State*, 113 Nev. 18, 25 931 P.2d 721, 725 (1997). Confidential communications may be between "the client or the client's representative and the client's lawyer or the representative of the client's lawyer." *Id.* "'Representative of the client' means a person having authority to obtain professional legal service, or to act on advice rendered pursuant thereto, on behalf of the client." Nev. Rev. Stat. § 49.075.

The attorney-client privilege applies to confidential communications between an attorney and client made for the purpose of facilitating the rendition of professional legal services. *Wynn Resorts, Ltd. v. Eighth Judicial Dist. Court*, 399 P.3d 334, 341 (Nev. 2017); *see also* Nev. Rev. Stat. § 49.095. This privilege encompasses prospective clients. *Pohl v. Ninth Jud. Dist. Ct. of State, ex rel. Cnty. of Douglas*, 132 Nev. 1018 (2016); Nev. Rev. Stat. § 49.095 (defining "client" to include one "who consults a lawyer with a view to obtaining professional legal services from the lawyer."). While the substance of the consultation is privileged, the amount, source and manner of payment of the fee should be disclosed. *Id.* fn. 3 (quoting *State v. Sheppard*, 52 Wash. App. 707, 763 P.2d 1232, 1234 (Wash. Ct. App. 1988)). "Mere facts are not privileged, but communications about facts in order to obtain legal advice are." *Wynn Resorts, Ltd. v. Eighth Judicial Dist. Court*, 399 P.3d 334, 341 (Nev. 2017).

"The work-product doctrine protects more than just communications between a client and attorney, and is thus broader than the attorney-client privilege." *Wynn Resorts, Ltd. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 133 Nev. 369, 383, 399 P.3d 334, 347 (2017) (citing *Hickman v. Taylor*, 329 U.S. 495, 508 (1947)). Like its federal counterpart, Nevada Rule of Civil Procedure 26(b)(3) "protects documents with 'two characteristics: (1) they must be prepared in anticipation of litigation or for trial, and (2) they must be prepared by or for another party or by or for that other party's representative.'" *Id.* (quoting *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.) (Torf)*, 357 F.3d 900, 907 (9th Cir. 2004)).

The party asserting the privilege has the burden to prove that the privilege applies. *Canarelli v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 464 P.3d 114, 120 (Nev. 2020) (citing *Ralls v. United States,* 52 F.3d 223, 225 (9th Cir. 1995)). In discussing this burden, the Nevada Supreme Court quoted *United States v. Martin*, 278 F.3d 988, 999–1000 (9th Cir. 2002) for the proposition that a party asserting privilege must "establish all the elements of the privilege." *Gibbs v. State*, 140 Nev. Adv. Op. 13, 543 P.3d 1185, 1188 (2024). In Nevada, that means the party asserting an attorney-client privilege must show that the communications were between an attorney and a client, were confidential, and were made for the purpose of facilitating the rendition of professional legal services. *Wynn Resorts, Ltd. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 133 Nev. 369, 374, 399 P.3d 334, 341 (2017); Nev. Rev. Stat. § 49.095.

### 1. Galaxy

#### a. Motion to Quash Subpoena Duces Tecum

Charm moves to quash the subpoena duces tecum to Galaxy based on privilege for three reasons. First, Charm argues that the financial documents and records related to it are "privileged, confidential, and protected information." ECF No. 74 at 16. Second, Charm argues that any documents or communications between Galaxy and Javed were obtained through Javed's representation of Galaxy and thus are attorney-client privileged. *Id.* Third, Charm contends that documents related to its decision to file a lawsuit constitute work product. *Id.* Javed responds that although she agreed to facilitate service of a subpoena to Galaxy, respond to it, and defend Galaxy's 30(b)(6) witness because Galaxy was an agent of Charm (her client at the time), she did

not represent Galaxy independently. ECF No. 75 a 5–6. Thus, no attorney-client privilege attached. *Id.* Charm replies that Javed was counsel to Galaxy because the caption of Galaxy's responses identifies her as their attorney. ECF No. 77 at 9 (citing Ex. 5).

First, Charm does not identify which financial records and documents it is seeking to protect. Furthermore, Charm fails to explain why the requested financial records are protected under Rule 45(d), nor does it put forth any legal authority on the point. Charm has not met its burden to show these documents are protected.

Second, this Court finds that Javed had a limited attorney-client relationship with Galaxy. An attorney-client relationship between them was formed because Galaxy sought assistance from Javed to respond to the subpoena and to defend its 30(b)(6) witness at a deposition, this assistance pertained to matters within Javed's professional competence as an attorney, and Javed did assist Galaxy. *See Todd v. State*, 113 Nev. 18, 25 931 P.2d 721, 725 (1997). Thus, any confidential communications between Javed and Galaxy made for the purpose of responding to the subpoena and defending the 30(b)(6) deposition would be privileged. However, Charm has not shown why Javed's limited attorney-client relationship with Galaxy would encompass all other documents and communications between the two. *See Canarelli v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 464 P.3d 114, 120 (Nev. 2020) ("It is well settled that privileges . . . should be interpreted and applied narrowly.").

Third, this Court agrees with Charm that documents related to Charm's decision to file a lawsuit against Javed and West Town Bank would be protected as work product. Such documents are work product because they were prepared by or for Charm or Charm's representative in anticipation of litigation. *See Wynn Resorts, Ltd. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 133 Nev. 369, 383, 399 P.3d 334, 347 (2017).

Charm does not move to quash Galaxy's subpoena to testify based on privilege. *See* ECF No. 94.

/ /

/ /

/ /

## 2. Kung and Brown

### a. *Motion to Quash Subpoena Duces Tecum*

In its motion to quash the subpoena duces tecum, Charm argues that the documents requested from Kung & Brown are privileged because Mr. Dhillon, Mr. Williams, and Ms. Kaur were owners/managers/representatives and agents of Charm and their communications with Kung and Brown were in their capacities as such. ECF No. 74 at 15. Javed responds that Ms. Kung has repeatedly taken the position that her firm did not represent Charm between the bankruptcy proceeding's conclusion in March 2022 and initiation of this present action in January 2025. ECF No. 75 at 11 (citing Ex. A). Javed argues that it specifically requested documents during this time period so that the communications would not be privileged. *Id.* at 12. Javed further argues that letters of engagement/representation agreements and billing records are not privileged. *Id.* (citing *In re Grand Jury Proceedings (Goodman)*, 33 f.3d 1060, 1063 (9th Cir. 1994) and *In re Osterhoudt*, 722 F.2d 591, 594 (9th Cir. 1983)).

Charm replies that legal consultations between Charm and its agents "between March 17, 2020, [sic] and the date of K&B's retention on this case, even if K&B was not then or immediately thereafter retained as counsel for Charm, remain privileged . . . ." ECF No. 77 at 10. In support of this statement, Charm argues that the attorney-client privilege extends to preliminary consultations. *Id.* (citing *Barton v. U.S. Dist. Ct. for Central Dist. Of Cal.*, 410 F.3d 1104, 1111 (9th Cir. 2005) (applying California law)). Charm further argues that any of Kung & Brown's legal opinions or other memorandum regarding deficiency judgments would clearly be work product. *Id.* at 11.

As an initial matter, this Court notes that Javed does not dispute that Mr. Dhillon, Mr. Williams, and Ms. Kaur are agents or representatives of Charm. For purposes of this order, this Court will assume that these individuals are encompassed by the attorney-client privilege between Charm and Kung and Brown as its representatives. *See* Nev. Rev. Stat. § 49.075.

Charm has not met its burden to show that all the memoranda, emails, text messages, or other documents Javed seeks are attorney-client privileged. Charm does not dispute that Kung and Brown was *not* its attorney between March 2022 and January 2025, and Mr. Dhillon declared

the same. *See* ECF No. 75 at 11–12 (citing Exs. A and K); *see also* ECF No. 77. If Kung and Brown were not Charm's attorneys during that time period, then there is no attorney-client privilege for communications made during that period. Furthermore, this Court is not convinced by Charm's argument that the requested documents would be privileged as preliminary consultations with prospective clients, nor has Charm put forth an explanation as to why that would be the case. Indeed, it is difficult for this Court to conceive that every email, text, memorandum, or document between Kung and Brown and Charm and its agents (former clients) over the course of *three years* would all be preliminary consultations with prospective clients.

Next, Charm has not met its burden to show that its legal opinions or other memoranda regarding deficiency judgments would be work product. While Charm says these are "clearly" work product, it provides no explanation as to how these documents were prepared in anticipation of litigation or for trial when it was not representing Charm and its agents. While documents may be protected when they are "prepared or obtained because of the *prospect* of litigation," Charm set forth no argument as to why or how the requested documents were prepared for prospective litigation. *See Wynn Resorts, Ltd. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 133 Nev. 369, 384 399 P.3d 334, 348 (2017).

Finally, Charm has not set forth any argument as to why any of the remaining documents or communications are privileged. Thus, it has not met its burden as to the remaining requests. In any event, this Court finds that fee or representation agreements are not privileged. *Pohl v. Ninth Jud. Dist. Ct. of State, ex rel. Cnty. of Douglas*, 132 Nev. 1018 (2016) fn. 3 (quoting *State v. Sheppard*, 52 Wash. App. 707, 763 P.2d 1232, 1234 (Wash. Ct. App. 1988)); *see also In re Osterhoudt*, 722 F.2d 591, 594 (9th Cir. 1983).

### b.  Motion to Quash Subpoena to Testify

Charm takes a similar position in its motion to quash the subpoena for Kung and Brown to testify at a deposition. ECF No. 95. It provides declarations from Mr. Dhillon, Mr. Williams, and Mr. Nadel stating that any communications they may have had with Kung and Brown during the time period when Kung and Brown was not representing Charm were still made solely for purpose of obtaining legal services or advice. *Id.* at 10. Javed responds that in each of the

declarations, Mr. Dhillon, Mr. Williams, and Mr. Nadel state that they do not recall having communications with Kung and Brown during the relevant timeframes, but if they did, it was for the purpose of obtaining legal advice. ECF No. 100 at 18. Javed argues that Charm fails to meet its burden to show that these theoretical communications are privileged given that Charm's agents cannot recall such conversations. *Id.*

In its reply, Charm again relies on the premise that the communications would be privileged even if Kung and Brown were not formally retained because the communications were with prospective clients to obtain legal advice. ECF No. 133 at 5. Charm does not address Javed's arguments regarding burden.

Here, the three declarations from Charm's agents fall short of establishing that their communications with Kung and Brown were confidential and made for the purpose of obtaining legal advice. The agents did not recall any communications with Kung and Brown. ECF No. 95-13 at 2, 5–8. They merely stated that *if* they did communicate with Kung and Brown, it would have been for the purpose of obtaining legal advice. *Id.* Charm cannot meet its burden by claiming *theoretical* communications were privileged, and even if it could, Charm offers nothing more than conclusory and blanket statements that all communications over a nearly three-year period were for the purpose of obtaining legal advice. Charm does not explain why such communications were to obtain legal advice. This is particularly deficient because Kung and Brown did not represent Charm during this time period, and Charm does not explain how communications over the three years were all preliminary consultations with prospective clients.

In sum, this Court grants Charm's motion to quash the subpoenas duces tecum in very limited part. Only those confidential communications between Javed and Galaxy made for the purpose of responding to the subpoena and defending the 30(b)(6) deposition are privileged. Charm did not move for a protective order in its motion to quash the subpoena duces tecum, so this Court only considers Charm's relevance arguments as to its motions to quash the subpoenas to testify.

/ /

/ /

### E. Relevance as to Galaxy and Kung & Brown

Federal Rule of Civil Procedure 26 governs the scope and limits of discovery.

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). In other words, information is discoverable if it is (1) relevant, (2) proportional, and (3) not privileged.

A party may seek a protective order to limit discovery under Federal Rule of Civil Procedure 26(c), which provides, in part, that "the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Relevance is not expressly listed as one of the grounds for issuing a protective order. *See* Fed. R. Civ. P. 26(c)(1) (listing protection from "annoyance, embarrassment, oppression, or undue burden or expense"); *Blankenchip v. Citimortgage, Inc.*, No. 2:14-cv-2309 WBS AC, 2015 WL 5009079, at *2 (E.D. Cal. Aug. 20, 2015) ("Nothing in Rule 26(c)(1), by its own express terms, authorizes a court to issue a protective order seeking documents from a party on the grounds that the documents are not relevant."). However, there is case law opining that the requirement to produce entirely irrelevant documents or information is an "undue burden" on a party. *Blankenchip*, 2015 WL 5009079, at *2 (collecting cases and ultimately declining to determine "whether a protective order may be obtained solely on the basis of irrelevance" because documents were plainly relevant); *see also G.K. Las Vegas Ltd. Partnership v. Simon Property Group, Inc.*, No. 2:04-cv-01199-DAE-GWF, 2007 WL 119148, at *4 (D. Nev. Jan. 9, 2007).

The burden is on the party seeking the protective order to make the showing of good cause "by demonstrating harm or prejudice that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004). When the discovery sought appears relevant on its face, the party resisting discovery bears the burden of establishing the lack of relevance. *Krause v. Nevada Mutual Insurance Company*, No. 2:12-cv-00342-JCM-CWH, 2014 WL 496936, at *3 (D. Nev.

Feb. 6, 2014). Conversely, if the relevance of the discovery sought is *not* apparent, then the party seeking discovery bears the burden of establishing the relevance of the request. *Id.* If relevance is established, then the party seeking to avoid the discovery bears the burden of explaining why it should otherwise be denied. *U.S. EEOC v. Caesars Entertainment*, 237 F.R.D. 428, 432 (D. Nev. 2006).

### 1. Galaxy

Javed seeks documents from Galaxy and to depose its 30(b)(6) witness on substantially similar topics regarding: the hotel's financial state, physical condition, management records, and closure; the purchase of the hotel including guaranties and the West Town Bank loan and the subsequent debt and deficiency and guaranty judgments; the insurance claim and lawsuit; the decision to file the malpractice lawsuit; Charm's ownership and management structure; Galaxy's management relationship with Charm; the authority of Mr. Dhillon to act as an agent of Charm, retainer agreements regarding the bankruptcy and malpractice cases; and the hotel's brand change. ECF No. 74 at 12–13; ECF No. 94-9 (Ex. A). Javed also seeks to depose Galaxy's witness regarding communications between Galaxy (on behalf of Charm) and Javed or West Town Bank and Charm's bankruptcy and dissolution. ECF No. 94-9 (Ex. A). As discussed previously, this Court denies the motion to quash the subpoena duces tecum on relevance grounds as Charm did not move for a protective order. *See* Section I.B. However, it does consider the similar relevance arguments in Charm's motion to quash Galaxy's deposition because Charm alternatively moved for a protective order in that motion.

Charm argues that the deposition topics are irrelevant because they do not relate to the malpractice claim against Javed. ECF No. 94 at 3, 10. Charm does not explain why it believes each topic is irrelevant, instead contending that it is Javed's burden to show relevance. *Id.* at 11. However, Charm does argue that its damages are not premised on the value of the hotel and its revenue but rather the insurance proceeds and fees improperly paid to Javed and West Town Bank. *Id.* at 15. Charm also argues that it is not alleging Javed mishandled the negotiation or settlement but rather acted unethically by simultaneously representing Charm and West Town Bank. *Id.*

First, Javed responds that the topics regarding Galaxy's mismanagement of the hotel, the loan to West Town Bank, and the insurance dispute action are relevant because Charm must prove that Javed's negligence caused it damages, i.e., that it would have recovered some amount of money in the insurance dispute but for Javed's negligence. ECF No. 99 at 6. As Javed explains, Charm's entitlement to the settlement proceeds is tied to whether it was entitled to the insurance proceeds, which involves the loan to West Town Bank, what funds were put into the hotel or towards the purchase, the hotel's business personal property value, and other information. *Id.* at 7–8. Second, Javed argues that Mr. Dhillon's statements to other parties about Charm, Galaxy, or the hotel's business are relevant because they go towards his credibility as a witness. *Id.* at 9. Javed explains this is relevant because Charm's allegations of fraud and misrepresentation against Javed can only be supported by Mr. Dhillon. *Id.* at 9–10. Third, Javed argues that Charm's motives in bringing this lawsuit are relevant because Mr. Dhillon testified he would file a lawsuit in order to obtain a recovery for Charm because it owed Galaxy a lot of money. *Id.* at 10.

As to damages, Charm replies that all insurance proceeds should have gone to it and that Javed should have only represented and advocated on behalf of Charm. ECF No. 102 at 2. As to credibility, Charm argues that Javed fails to elaborate how Galaxy's credibility is relevant or at issue here because Galaxy is not a party and managed the hotel prior to its closure, so its management and actions are irrelevant to the malpractice claims Charm has against Javed. *Id.* at 3. As to motives, Charm argues that its motives in bringing the suit are irrelevant to whether Javed committed legal malpractice. *Id.* Charm further argues that whether Mr. Dhillon has an interest in getting money back for Galaxy, or what Charm pays or doesn't pay to Galaxy, is not relevant to whether Javed committed legal malpractice. *Id.* at 4.

This Court finds that the relevance of the Galaxy deposition topics is not apparent on its face, so this Court will first determine whether Javed has established the relevance of the topics.

The topics regarding the hotel's financial state, physical condition, management records, closure, purchase, guaranties, debt, judgments, the hotel brand change, Charm's bankruptcy and dissolution, and the insurance claim and lawsuit are relevant because they relate to Charm's ability to prove the damages element of its legal malpractice claim. These topics were relevant in

the underlying insurance dispute and go to whether Charm was able to meet its debt obligations and could recover insurance proceeds. *See Wacht v. Peel & Brimley, LLP*, 131 Nev. 1360, 2015 WL 4503945, at *2 (Nev. 2015) ("Establishing causation . . . requires the plaintiff to prove what has been characterized as a case within a case, that is, the plaintiff must demonstrate that the claim underlying the malpractice action would have been successful if the attorney had acted in accordance with his or her duties.") (quoting *Luttgen v. Fischer*, 107 P.3d 1152, 1154 (Colo. App. 2005)). The underlying insurance dispute is relevant to Javed's defense that Charm cannot prove damages because it could not have recovered insurance proceeds regardless of her alleged negligence.

The topics regarding the relationship of and communications between Galaxy and Charm, Mr. Dhillon's authority and the authority of other individuals to act on behalf of Charm, Charm's ownership structure, and the decision to file the malpractice lawsuit are not relevant. Javed asserts that these are relevant to Charm's motives in bringing the lawsuit. ECF No. 75 at 9–10; ECF No. 99 at 10. Javed's theory is that Charm brought the lawsuit to recover money it was never entitled to so that Mr. Dhillon could profit because Charm owed Galaxy money and Mr. Dhillon co-owned Galaxy with his wife. Javed explains that these motives are relevant to its pending motion to dismiss, in which Javed moves to dismiss Charm's complaint on the grounds that it is frivolous and solely filed to harass Javed and coerce her into settlement. ECF No. 99 at 10–11. This is not enough to establish relevance. The district judge has since denied Javed's motion to dismiss. ECF No. 124. Moreover, Javed did not explain how Charm's motives are part of her legal defense, nor is that fact apparent from the contents of her motion to dismiss. *See* ECF No. 17.

Mr. Dhillon's statements to other parties about Charm, Galaxy, or the hotel, are relevant to Mr. Dhillon's credibility. His credibility is relevant to this case because he has asserted that Javed lied, concealed, and engaged in fraud against him. Javed intends to defend herself by addressing the issue of his credibility with the jury. *See* ECF No. 99 at 10.

Javed did not address why the retainer agreements relating to Charm's bankruptcy and malpractice suit are relevant. In her opposition to the first motion to quash, she argues that they are relevant to the relationship and authorization of Charm to engage counsel and will be relevant

to the inquires to Charm and Galaxy during depositions. ECF No. 75 at 10. But this does not explain how these agreements are relevant to the claims and defenses in this suit.

Because Javed has established the relevance of some of the topics, this Court turns to Charm to explain why the deposition on those relevant topics should be denied. Charm contends that Javed issued the subpoena in bad faith to harass, oppress, annoy, and increase costs to Charm and Galaxy because the topics are irrelevant. ECF No. 94 at 12, 15. Charm also contends that Javed already deposed Mr. Dhillon, who will be Galaxy's 30(b)(6) witness, in his individual capacity, and has not sought to depose Charm. *Id.* at 10–11. Javed responds that the deposition of Galaxy is necessary because when she deposed the sole owner of Charm, Ms. Kaur, most of her answers to the questions were that "Mr. Dhillon knows." *Id.* at 11. Javed further argues that the deposition is necessary because Mr. Dhillon, at his individual deposition, testified that he lacked knowledge on some of the questions regarding Galaxy. *Id.* at 13. Javed clarified that it would not ask duplicative questions, and Mr. Dhillon could confirm under oath that the prior answers he provided would be the same answers Galaxy would provide as an agent of Charm. *Id.*

As discussed above, some of the deposition topics are relevant. In addition, deposing Mr. Dhillon in his capacity as Galaxy's 30(b)(6) witness would not be done in bad faith because Mr. Dhillon was unable to answer questions about Galaxy at his individual deposition. As a 30(b)(6) witness, Mr. Dhillon will be prepared to answer such questions. And Javed stated that she will not ask duplicative questions that Mr. Dhillon has already answered. Charm has set forth no other specific reason to find that the subpoena was issued in bad faith. In conclusion, Javed may depose Mr. Dhillon as a 30(b)(6) witness for Galaxy on the above topics that this Court has determined are relevant.

### 2. Kung and Brown

Neither party provided a list of the deposition topics regarding the subpoena to Kung & Brown. However, in the motion to quash Charm argues that:

> Defendant Javed's subpoenas seek to question Ms. Kung and Ms. Brown regarding their attorney-client privileged and confidential communications with Charm, brazenly identified by Javed as: "All communications between you and any representative or agent of Plaintiff, including but not limited to Jagmohan Dhillon, Param Kaur, Larry Williams,

Scott Nadel and A.J. Kung/Brandy Brown, from March 17, 2022[,] through January 15, 2025."

ECF No. 95 at 7. Charm moves to quash the deposition of Ms. Brown and Ms. Kung as privileged and irrelevant. *Id.* at 8–21. Charm also argues that public policy strongly disfavors deposing opposing counsel except in "exceptionally limited circumstances." *Id.* at 17 (citing *Club Vista Fin. Servs. V. Dist. Ct.*, 128 Nev. 224, 229, 276 P.3d 246, 249 (Nev. 2012)).

Javed responds that the deposition is relevant because Ms. Brown verbally threatened to file a malpractice case against Javed if she did not reduce her fees in the insurance action. ECF No. 100 at 15. Javed explains this is relevant to Charm's motives in filing this malpractice suit, which is relevant to Javed's motion to dismiss the complaint on the grounds that it is frivolous and filed to harass Javed and coerce her into a settlement. *Id.* Second, Javed argues that Ms. Kung directly contradicted the testimony of Mr. Dhillon by stating that Charm only opposed the insurance settlement because the check would go to Javed's trust account. *Id.* at 16.

Charm replies that, even assuming arguendo Ms. Brown advised Javed that she would be sued if she failed to remedy her legal malpractice, this would be irrelevant to the claims and defenses in this case. ECF No. 133 at 3. Charm further argues that Javed seeks to depose Ms. Kung but has not articulated the relevance or necessity of such a deposition. *Id.* at 5.

This Court first determines whether Javed has established the relevance of the Kung and Brown deposition as it is not apparent on its face. Javed has not done so. As discussed above, Javed did not explain how Charm's motives in bringing this case are part of her legal defense, nor is that fact apparent from the contents of her motion to dismiss. *See* ECF No. 17; *see also* ECF No. 124 (denying motion to dismiss without prejudice). Thus, even if Ms. Brown "threatened" Javed, this would not be relevant to this case's claims and defenses. In addition, Javed did not explain why the contradictory statements of Ms. Kung and Mr. Dhillon are relevant. The mere fact that Mr. Dhillon and Ms. Kung made different statements about opposing the settlement is not relevant to this case's claims and defenses. Finally, even if Javed met her burden to show relevance, she has put forth no argument as to why the facts of this case constitute one of the exceptionally limited circumstances in which a court should allow the deposition of opposing counsel. *See* ECF No. 95 at 17 (citing *Club Vista Fin. Servs. v. Dist. Ct.*, 128 Nev. 224, 230, 276

P.3d 246, 250 (2012) ("Therefore, we conclude that such depositions [of a party's attorney] should only be permitted under exceptionally limited circumstances.")). Accordingly, this Court grants Charm's motion to quash the deposition of Kung and Brown.

### F. No sanctions will be awarded.

In all three motions to quash, Charm moves for sanctions in the form of attorney's fees and costs for bringing its motions because it claims that Javed issued the subpoenas in bad faith and for an improper purpose. ECF No. 74 at 22; ECF No. 94 at 16; ECF No. 95 at 21. Charm argues that Javed requested overly broad, irrelevant, and privileged documents and communications. ECF No. 74 at 22; ECF No. 94 at 16; ECF No. 95 at 21. Charm further argues that Javed sought to harass and oppress Ms. Kung and Ms. Brown. ECF No. 95 at 22.

The Ninth Circuit has found that courts may impose sanctions under Rule 45(d)(1) "when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013). While the failure to narrowly "tailor a subpoena may be a ground for sanctions, the district court need not impose sanctions every time it finds a subpoena overbroad; such overbreadth may sometimes result from normal advocacy, which we have said should not give rise to sanctions." *Id.* (citing *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 426 (9th Cir. 2012)).

Here, it is not clear that Charm has standing to move for sanctions under Rule 45(d). While Charm may move to quash the subpoenas on privilege grounds, as discussed above, it does not have standing to quash the subpoenas on other grounds. Charm sets forth no argument or legal authority as to why it has standing to move for sanctions based on "bad faith, [] an improper purpose, or [] a manner inconsistent with existing law." *See Legal Voice*, 738 F.3d at 1185. Moreover, this record does not support a conclusion that Javed issued the subpoenas in bad faith or for an improper purpose. While this Court found that some of the subpoena requests were irrelevant and overbroad, this is a part of normal advocacy and does not warrant sanctions.

/ /

/ /

/ /

## II.   CONCLUSION

**IT IS ORDERED** that Charm's motion to quash subpoenas duces tecum to Galaxy Management and Kung and Brown (ECF No. 74) is **DENIED in part and GRANTED in part** consistent with the above order.

**IT IS FURTHER ORDERED** that Charm's motion to quash the subpoena to testify to Galaxy (ECF No. 94) is **DENIED in part and GRANTED in part** consistent with the above order.

**IT IS FURTHER ORDERED** that Charm's motion to quash the subpoena to testify to Kung and Brown (ECF No. 95) is **GRANTED**.

DATED: April 14, 2026

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE