**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| Charm Hospitality LLC, | Case No. 2:25-cv-00282-RFB-BNW |
| Plaintiff, | |
| v. | **ORDER** |
| Nohayia Javed, et al., | |
| Defendants. | |

Before this Court is Defendant Javed's motion to strike Plaintiff's expert, Rob Bare. ECF No. 107. Plaintiff responded at ECF No. 118, and Javed replied at ECF No. 123. The parties and Court are familiar with the arguments and facts of this case, so this Court only incorporates them as necessary to its order. For the reasons discussed below, this Court grants in part and denies in part Javed's motion.

## I.    DISCUSSION

### A.  Legal Standard

"Expert testimony is admissible pursuant to the Federal Rules of Evidence, primarily Rule 702. Under *Daubert*, the district court acts as a 'gatekeeper,'" ensuring that expert testimony meets the standards of reliability required under Rule 702. *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 605 (9th Cir. 2002) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)) (internal citations omitted). Courts have broad discretion over the discharge of this gatekeeping authority, "not only . . . in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." *Elsayed Mukhtar v. Calif. State Univ., Hayward*, 299 F.3d 1053, 1064 (9th Cir. 2002), *overruled on other grounds by Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 467 (9th Cir. 2014).

Under Rule 702, a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise," if the proponent of the testimony demonstrates "that it is more likely than not" that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The standards for admitting expert evidence in a diversity case are matters that fall on the procedural side of the *Erie* divide and therefore are governed by federal law. *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 857 (9th Cir. 2019).

### B.  Mr. Bare is qualified to offer an expert opinion.

First, Javed argues that Mr. Bare is not qualified to testify because he lacks knowledge and experience in the areas of law that are relevant to the underlying action. ECF No. 107 at 6–7. While Javed concedes that Mr. Bare is knowledgeable about the Nevada Rules of Professional Conduct and disciplinary proceedings, she contends that Mr. Bare has no experience performing client conflicts, prosecuting first-party insurance claims, or handling commercial litigation. *Id.* at 6–9. In support of her argument, Javed cites *Sterner v. U.S. Drug Enforcement Agency*, 467 F. Supp. 2d 1017 (S.D. Cal. 2006), and *Battle v. Thornton*, 646 A.2d 315 (D.C. 1994). *Id.*

Charm responds that Mr. Bare is "eminently qualified" to provide expert testimony because he worked at the State Bar of Nevada for 17 years (and as the chief attorney for 15 of those years), in which he prosecuted and tried 870 disciplinary hearings. ECF No. 118 at 4. Charm explains that Mr. Bare lobbied to modify the professional responsibility rules during this time, and only left the State Bar's office to become a state court judge. *Id.* He was a state court judge for 10 years, during which time he presided over more than 15,000 civil and business cases. *Id.* Charm argues that the fact Mr. Bare has not personally performed a conflicts analysis for business clients is irrelevant given that he is learned and experienced in what is required to conduct a sufficient conflicts analysis under Nevada law. *Id.* at 5.

Javed replies that Mr. Bare is not qualified to opine on the standard of care because he cannot reliably explain what would fall below the standard of care given his lack of experience and knowledge in the underlying practice areas. ECF No. 123 at 2–3. Javed points to Mr. Bare's

statement that he would not be qualified to render an opinion on Charm's dispute with West Town Bank over the insurance proceeds. *Id.* at 3.

Here, Mr. Bare opined that Javed (1) breached the duty of competent and diligent representation by failing to research Nevada and Illinois law prior to advising Charm that West Town Bank needed to be a co-client; (2) breached the duty of communication by failing to advise Charm that (a) Javed was not licensed to practice law in Nevada or Illinois, (b) Charm *may* not receive proceeds under the policy; and (c) West Town Bank could be made a co-claimant; (3) failed to provide a facially valid conflict waiver by not identifying the potential conflict regarding division of proceeds; (4) breached the standard of care by disbursing the settlement payment without Charm's consent or a court order; and (5) charged unreasonable attorney's fees and potentially excessive costs. ECF No. 107, Ex. D.

Mr. Bare's above opinions are closely related to the rules of professional conduct and his ample experience and knowledge regarding the duties of communication, competence, and diligence, as well as client conflicts. This Court further notes that Mr. Bare presided over 15,000 civil and business cases during his tenure as a state court judge for 10 years. This, combined with his 17 years of experience with the rules of professional conduct, make it "more likely than not" that Mr. Bare's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702. For example, Mr. Bare's extensive knowledge of the duties a lawyer owes under the rules of professional conduct can assist the trier of fact to determine whether Javed breached one of those duties owed to Charm.

Javed's cited cases do not change this Court's analysis. In *Sterner v. U.S. Drug Enforcement Agency*, the movant argued that the expert was not qualified to provide an expert opinion regarding the calculation of the plaintiff's tax burden and his calculations of net profits or losses from his business. 467 F. Supp. 2d 1017, 1033–34 (S.D. Cal. 2006). The district court for the Southern District of California agreed, explaining that:

> Although Mr. Cohen passed the qualifying examinations for Treasury Agent and IRS Special Agent positions, he has neither worked nor gained any practical experience in the field, and he has not testified that he has gained specialized knowledge through his

education in the field of tax preparation or business accounting calculations specifically. In addition, Mr. Cohen is not a tax preparer or business accountant, has not been trained as a tax preparer or business accountant, and has not received formal training in the field.

*Id.* at 1034. This case is distinct from the facts here because Mr. Bare has practical experience in attorney professional discipline as he worked as the chief attorney for the State Bar of Nevada for 15 years. This is relevant to his opinion on whether Javed breached the rules of professional conduct. The fact that Mr. Bare does not have practical experience in first-party insurance disputes or that he has not personally performed a conflicts analysis for business clients is unlike the expert in *Sterner* who appeared to have no practical experience, no specialized knowledge, and no formal training in tax and business accounting calculations, which he was testifying about.

In *Battle v. Thornton*, the district court for the District of Columbia considered whether a lawyer was required to be formally recognized as a specialist in order to be called as an expert witness in a malpractice trial. 646 A.2d 315, 321 (D.C. 1994). The court stated this requirement would be unreasonable, if not impossible. *Id.* It reasoned that the expert, a general practitioner with substantial experience in criminal law, was not necessarily unqualified to testify merely because he had never handled a Medicare fraud case. *Id.* 324. The court found that the expert was qualified to testify as an expert based on his extensive experience in the practice of criminal law, including criminal fraud. Id. It explained that "[a]ny weakness attributable to [the expert's] lack of experience with Medicaid fraud was a matter for cross-examination at trial, affecting the weight to be accorded his testimony." *Id.* Javed emphasized the following language in the opinion:

> [A]n attorney will be qualified to testify as an expert in a legal malpractice action if the witness is a general legal practitioner who by training and experience is familiar with the degree of care and skill reasonably to be expected of lawyers acting under the circumstances of the case in which the expert is testifying.

*Id.*

First, this case is persuasive, not binding. Second, the above language provides a situation in which an attorney will be qualified to testify as an expert. But nothing in the above case states that an expert is *unqualified* to testify in a legal malpractice action merely because he has not practiced in the area of law of the underlying action. Nor has this Court found a case stating as

much. *See GemCap Lending, LLC v. Quarles & Brady, LLP*, 269 F. Supp. 3d 1007, 1029 (C.D. Cal. 2017), *aff'd sub nom. GemCap Lending I, LLC v. Quarles & Brady, LLP*, 787 F. App'x 369 (9th Cir. 2019) (denying motion to strike expert report on the basis that the expert was not qualified merely because his experience was only in professional ethics).

This Court has broad discretion to qualify experts. Mr. Bare's extensive experience with the rules of professional conduct make it more likely than not that his experience and knowledge will help the trier of fact determine whether Javed violated one of those rules. Many of Javed's arguments generally state that Mr. Bare's conclusions are wrong, but these are not for this Court to decide. *See Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013) ("The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.").

### C. Mr. Bare's opinion is supported by sufficient facts or data.

Javed argues that Mr. Bare's opinion is not based on sufficient facts or data because he did not independently analyze the underlying loan documents or the insurance policy, and he lacked knowledge about the personal guaranty signed by Param Kaur. ECF No. 107 at 9–10. She contends that if Mr. Bare does not know that Charm had any rights to the proceeds, he cannot know whether Javed did an adequate job protecting Charm's rights. *Id.* at 10. She further argues that Mr. Bare performed no analysis of the effect of the personal guaranty of Charm's loan on the recovery of the insurance proceeds. *Id.* Instead, Javed contends, Mr. Bare "blindly accepted Dhillon or Kung's alleged statement to him that Charm would have 'bailed out' of the prosecution of the insurance claim if it thought it did not stand to recover any insurance proceeds." *Id.*

The requirement that expert testimony be based on "sufficient facts or data" requires foundation. *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1025 (9th Cir. 2022); Fed. R. Evid. 702. The "key inquiry" is "whether an expert had sufficient factual grounds on which to draw conclusions." *Hyer v. City & County of Honolulu*, 118 F.4th 1044, 1056 (9th Cir. 2024) (citation omitted). "Rule 702 does not license a court to engage in freeform factfinding, to select between

competing versions of the evidence, or to determine the veracity of the expert's conclusions at the admissibility stage." *Elosu,* 26 F.4th at 1026.

Here, Mr. Bare does not appear to affirmatively opine that Charm did or did not have rights to the proceeds. His opinion is that Javed did not properly communicate to Charm what its rights, if any, were to the proceeds. ECF No. 107, Ex. D, at 10–12. Mr. Bare states that Javed breached her duties to Charm when she did not explain to Charm how the policy proceeds were to be allocated under applicable law. *Id.* at 12.

> If Ms. Javed believed that Charm was to receive nothing, then she needed to inform Charm of the fact, as well as the reasons why she derived that conclusion. . . . Similarly, if she believed that Charm was entitled, or might be entitled, to some payment, she needed to explain her reasons and the contingencies which would affect Charm receiving (or not receiving) at least a portion of the Policy proceeds.

*Id.* In addition, Mr. Bare opined that Javed did not properly disclose the conflict of interest. *Id.* at 14.

Mr. Bare's opinion is based on what Javed did or did not disclose to Charm (given Charm's version of the facts). He did not need to review the loan documents or insurance policy to form this opinion. In addition, it appears that he did review the fee contract. Based on the scope of Mr. Bare's opinion, this Court cannot say that his opinion was not based on sufficient facts or data merely because he did not review the loan documents or insurance policy. In sum, it is more likely than not that his above opinions were based on sufficient facts or data.

As for Javed's argument regarding the personal guaranty, this argument is based on disputed facts, i.e., what Charm would have done if it thought it would not recover proceeds in the insurance dispute. Javed contends that Mr. Bare blindly accepted Dhillon and Kung's statements. As the parties have repeated throughout this litigation, much of this case comes down to a he-said-she-said scenario. This Court will not choose between the parties' competing version of the facts at the admissibility stage.

/ /

/ /

/ /

/ /

**D. Mr. Bare's opinion that the GSICA insurance payment was uncontested is not reliable.**

Javed argues that Mr. Bare's opinions on the alleged breaches of duties owed by her to Charm are not reliable. She lists several examples in support of this argument. This Court addresses each in turn.

First, Javed argues that Mr. Bare does not explain what, if anything, would have changed about Charm's position if she had researched Nevada or Illinois law. ECF No. 107 at 11. Second, Javed argues that she had no reason to tell Charm that she was not licensed in Nevada because Charm's representative already knew that. *Id.* at 12. In his expert report, Mr. Bare states that lawyers have a duty to familiarize themselves with factual and legal elements of a problem and that the facts did not show that Javed familiarized herself with Nevada or Illinois law. ECF No. 107, Ex. D at 10. He further states that Javed did not communicate to Charm that she was not licensed to practice law in Nevada or Illinois. *Id.* at 11–12.

Mr. Bare's opinions are based in his experience with the rules of competence, diligence, and communication governing lawyer conduct. Javed does not contest that she did not familiarize herself with Nevada or Illinois law or that she did not tell Charm she did not practice law in Nevada or Illinois; rather, Javed is arguing that she did not need to do so because it wouldn't have changed Charm's position or because Charm already knew. These arguments should be attacked by cross examination—not exclusion. *See Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), *as amended* (Apr. 27, 2010) ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion"); *see also Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 543–44 (C.D. Cal. 2012) ("Defendant raises a series of objections to Waters' testimony, some of which go less to the reliability of Waters's opinions than to defendant's disagreement with his conclusions and attack on his credibility as a witness.").

Third, Javed argues that Mr. Bare incorrectly opined that the GSICA's initial payment under the policy was uncontested and thus her fees were excessive. ECF No. 107 at 16–17. Javed contends that herself and West Town Bank's representative testified that GSICA challenged coverage under the policy because it suspected Charm of engaging in insurance fraud. *Id.* at 14. In

his expert report, Mr. Bare states that "my understanding is that the damage to the Property was genuine and that GSICA would be paying on the loss—the only question was how much." ECF 107, Ex. D at 18. Mr. Bare identifies no facts underlying his "understanding" that the insurance payment was uncontested, nor can this Court find any in his expert report. *See id.* at 5–6. Thus, Mr. Bare's opinion that GSICA's initial payment under the policy was uncontested, and his consequent statement that Javed's fees were excessive, will be stricken because they lack foundation.

Fourth, Javed argues that Mr. Bare incorrectly opined that she disbursed payment without Charm's knowledge or consent. ECF No. 107 at 16–17. She further contends that Charm had knowledge about and consented to the disbursement payment because she provided Dhillon a copy of the distribution report and Charm authorized the disbursement of payments in the joint representation agreement. *Id.* In his expert report, Mr. Bare contends that the distribution of funds provision was unenforceable because of the invalid conflict waiver and because Charm was not properly informed of the recovery prior to disbursal. ECF No. 107, Ex. D at 16–17. Mr. Bare, in a previous section of expert report, explained why he believed the conflict waiver was invalid and why he believed Javed failed to inform Charm about the disbursement of the policy proceeds. *Id.* at 11–12. While Javed may have provided these documents to Charm, Mr. Bare opines that Javed did not properly inform and explain the effect of these reports/agreements. Javed is merely disputing the conclusion Mr. Bare reached, which is not a reason to strike his opinion at the admissibility stage. *See Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1026 (9th Cir. 2022).

### E. Mr. Bare's opinion regarding forfeiture and damages will be stricken as improper legal conclusions and opinions.

Javed argues that Mr. Bare's opinion that her fees are subject to forfeiture is an improper interpretation of the law. She further argues that Mr. Bare applies incorrect legal standards by stating that Charm can bring a legal malpractice case regardless of whether Charm or West Town Bank is entitled to the insurance proceeds. ECF No. 107 at 17–18. In his expert report, Mr. Bare states that "Ms. Javed should be required to forfeit some, if not all, of her fees under the Fee Contract given her violations of the rules governing attorney conduct" because an attorney's fee

is subject to forfeiture if duties to a client are violated. ECF No. 107, Ex. D at 19. Mr. Bare further opines that "[r]egardless of whether Charm or WTB is entitled to the Policy proceeds, Ms. Javed's breaches of the standard of care have damaged Charm." *Id.* at 20. The rebuttal expert, Dennis Kennedy, opined that forfeiture is not automatic and that there are factors a court (or jury) must consider. ECF No. 107, Ex. G at 22–24.

"[I]nstructing the jury as to the applicable law 'is the distinct and exclusive province' of the court." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (quoting *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993). In addition, expert witnesses cannot opine as to legal conclusions, i.e., an opinion on an ultimate issue of law. *Id.*

Here, Mr. Bare's statement that Javed should be required to forfeit some if not all of her fees is a legal conclusion. And his statement that Javed damaged Charm regardless of whether Charm or West Town Bank was entitled to the policy proceeds is also a legal conclusion and akin to instructing the jury as to the applicable law. Several Nevada cases require "the plaintiff to prove what has been characterized as a case within a case, that is, the plaintiff must demonstrate that the claim underlying the malpractice action would have been successful if the attorney had acted in accordance with his or her duties," i.e., Charm would need to prove that it would have been successful in the underlying insurance claim if Javed had not breached her duties. *See Wacht v. Peel & Brimley, LLP*, 131 Nev. 1360, 2015 WL 4503945, at *2 (Nev. 2015) (quoting *Luttgen v. Fischer*, 107 P.3d 1152, 1154 (Colo. App. 2005)). Thus, Mr. Bare's statement may apply a different level or type of causation than the court may apply. The court should instruct the jury as to the applicable law, not experts. This statement will therefore be stricken.

/ /
/ /
/ /
/ /
/ /
/ /
/ /

## II.   CONCLUSION

**IT IS ORDERED** that Javed's motion to strike Rob Bare (ECF No. 107) is **GRANTED in part and DENIED in part.** Mr. Bare's statements regarding (1) the GSICA payment being uncontested and excessive fees; (2) forfeiture of fees; and (3) damages regardless of entitlement to the policy proceeds will be stricken.

DATED: June 11, 2026

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE