**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

CHARM HOSPITALITY LLC d/b/a WINGATE BY WYNDHAM ELKO.,

Plaintiff,

v.

NOHAYIA JAVED, ESQ., *et al.*,

Defendants.

Case No. 2:25-cv-282-RFB-BNW

**ORDER GRANTING SUMMARY JUDGMENT**

Before the Court is Charm Hospitality LLC's ("Charm") motion for partial summary judgment as to Nohayia Javed, Esq. ("Javed") ("Charm MPSJ to Javed" ECF No. 109) and Charm's motion for partial summary judgment as to West Town Bank and Trust ("Bank") ("Charm MPSJ to Bank" (ECF No. 108). Also before the Court is Javed's motion for summary judgment against Charm ("Javed MSJ" ECF No. 116) and the Bank's motion for summary judgment against Charm ("Bank MSJ" ECF No. 112).[1] For the following reasons, the Court grants summary judgment, in its entirety, to Javed and the Bank, and it denies summary judgment, in its entirety, to Charm.

## I. BACKGROUND

Based on the parties' motions and the record, the Court finds the following facts undisputed.

On September 7, 2016, Charm and the Bank entered into a loan security agreement.

---

[1] All other referenced documents are titled here: ("Complaint," ECF No. 1); ("Charm Response to Bank," ECF No. 128); ("Charm response to Javed," ECF No. 129); ("Charm Reply to Javed," ECF No. 134); ("Charm Exhibits," ECF No. 110, 130 ); ("Javed Exhibits," ECF No. 116-1); ("Bank Exhibits," ECF No. 113)

Complaint, ECF No. 1, at 3; Charm Exhibits, ECF No. 110-1, at 2.[2] The Bank loaned Charm $8,260,000.00. Charm used that loan to purchase 3019 Idaho Street, Elko, Nevada 89801 ("Hotel"). See Complaint, ECF No. 1, at 2; Charm MPSJ to Bank, ECF No. 108, at 4. Charm owned the Hotel and the Hotel was subject to a Deed of Trust and Promissory Note to which the Bank was the mortgagee. Bank MSJ., ECF No. 112, at 3; Charm MSJ to Bank, ECF No. 108, at 4.

At some point, Charm insured the Hotel under an insurance policy through General Security and Indemnity Company of America ("GSICA"). Bank MSJ., ECF No. 112, at 3; Charm MSJ to Bank, ECF No. 108, at 5. The insurance policy lists the Bank as a Loss Payee. Bank Exhibits, ECF No. 113-3, at 60; Charm Exhibits, ECF No. 130-4, at 60. The insurance policy, relevantly, notes "[t]he Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trust, whose interest in" the Hotel "is established by[,]" among other things "[m]ortgages, deeds of trust or security agreement[.]" Bank Exhibits, ECF No. 113-3, at 60; Charm Exhibits, ECF No. 130-4, at 60. The policy also notes that "[t]he Loss Payee has the right to receive loss payment even if the Loss Payee has started a foreclosure or similar action on the" Hotel. Bank Exhibits, ECF No. 113-3, at 60; Charm Exhibits, ECF No. 130-4, at 60.

Around May 2019, Charm defaulted on its loan. Charm MSJ to Bank, ECF No. 108, at 5; see Charm Exhibits, 110-2, at 2. In September 2020, Charm filed for Chapter 11 bankruptcy. Complaint, ECF No. 1, at 3; Bank MSJ, ECF No. 112 at 2. The bankruptcy court later denied Charm's Chapter 11 restructuring plan. Charm Exhibits, ECF No. 110-3, at 2; Bank MSJ, ECF No. 112, at 3.

In February 2022, a water pipe in the Hotel froze and burst, flooded the building, and essentially destroyed everything inside of the Hotel. Charm MSJ to Bank, ECF No. 108, at 5; Bank MSJ, ECF No. 112, at 3. Charm, a few days later, retained Javed to assist it in prosecuting its insurance claim against GSICA. Charm MSJ to Bank, ECF No. 108, at 5; Javed MSJ, ECF No. 116, at 3. Around this time, Jagmohan Dhillon ("Dhillon"), who represented Charm, connected Javed with Mick Crawford ("Crawford") who represented the Bank. Javed MSJ, ECF No. 116 at 4; Javed Exhibits, ECF No. 116-1, at 139.

---

[2] All page citations refer to the CM/ECF pagination.

On April 2, 2022, Javed sent a proposed joint representation agreement to Dhillon and Crawford. Charm Exhibits, ECF No. 110-10, at 2; Javed Exhibits, ECF No. 116-1, at 58. Dhillon signed the proposed joint representation agreement, but Crawford did not. Charm Exhibits, ECF No. 110-10, at 2; Javed Exhibits, ECF No. 116-1, at 58. Five days later, Javed sent a letter to GSICA notifying the company that Javed is representing Charm. Charm Exhibits, ECF No. 110-6, at 2.

In May 2022, the Bank obtained a Judgement against Charm's sole owner, Param Kaur, for $8,205,562.98. Bank Exhibits, ECF No. 113-5, at 3. And in the following month, the Bank sold the Hotel to a third party for $2,901,000.00 at a foreclosure sale. Charm Exhibits, ECF No. 110-11, at 3; Bank Exhibits, ECF No. 113-6, at 2.

During those months, Javed and the Bank negotiated the terms of the agreement. Javed MSJ, ECF No. 116, at 4; Charm MPSJ to Javed, ECF No. 109, at 7. Ultimately, on August 9, 2022, Dhillon, on behalf of Charm, and Crawford, on behalf of the Bank, signed a revised joint representation agreement. Bank Exhibits, ECF No. 113-4 at 5; Charm Exhibits, ECF No. 110-12, at 5. This agreement noted that Javed represented Charm and the Bank "in connection with a property damage claim for water loss and ensuing damage to the building, business personal property, and business income loss of" the Hotel. Bank Exhibits, ECF No. 113-4 at 5; Charm Exhibits, ECF No. 110-12, at 5. The agreement continued: "[a]lthough the interest of both parties in this matter are generally consistent," the parties "acknowledge that . . . differences may exist or become evidence during the course of" Javed's representation. Bank Exhibits, ECF No. 113-4 at 2; Charm Exhibits, ECF No. 110-12, at 2. The agreement noted that "both parties have the same end goal[,]" which was to "recover monies from the insurance company to pay for damages to the [Hotel] arising out of the claim[.]" Bank Exhibits, ECF No. 113-4 at 3; Charm Exhibits, ECF No. 110-12, at 3. The agreement also included a distribution of recoveries provision ("waterfall provision"). Bank Exhibits, ECF No. 113-4 at 4; Charm Exhibits, ECF No. 110-12, at 5. That provision noted that "after payment of attorney's fees and case expenses, all recoveries made in [the] case will be disbursed as such: (1) payment of expenses incurred by West Town Bank & Trust in the foreclosure and related legal proceedings, [c]urtailment of the principal balance of the

loan, (3) [a]ccrued interest, fees and costs[,] [and] (4) [a]ny remaining funds shall be payable to Charm Hospitality, LLC." Bank Exhibits, ECF No. 113-4 at 4; Charm Exhibits, ECF No. 110-12, at 5. Dhillon signed the revised joint representation agreement seconds after receiving it. Charm MPSJ to Javed, ECF No. 109, at 8.

On December 26, 2022, Javed sent a letter to GSICA's counsel notifying GSICA that she represented both Charm and the Bank. Charm Exhibits, ECF No. 110-17 at 2. In that letter, Javed noted that the checks should be drafted as follows "Charm Hospitality, LLC, Westtown Bank and the Javed Law Firm, PLLC." Id. Javed then directed GSICA to send any checks to her law firm. Id. The letter also noted that "[t]he damages in this case, via a potential settlement of judgment, shall be divisible between the parties in accordance with the Foreclosure Order. [The Bank] is entitled to damages in the amount of the deficiency of Charm Hospitality, LLC and incurred expense less the recovery of the auctioned price of the property. All remaining damages belong to Charm Hospitality." Id.

Exactly one month later, GSICA issued a check in the amount of $1,597,150.33. Bank Exhibits, ECF No. 113-8, at 2; Charm Exhibits, ECF No. 110-8, at 2. Javed and Crawford disbursed the money in the following manner: $479,139.09 for Javed, $11,902 for case expenses, and $1,106,089.23 for the Bank. Bank Exhibits, ECF No. 113-10 at 2; Charm Exhibits, ECF No. 110-19, at 2-3.

Nearly two months later, Javed notified Dhillon of the check disbursements. Charm Exhibits, ECF No. 110-20 at 2. Javed, in her email, wrote: "[o]ur case contends that the . . . entire property was insured for $7.5 million. As such, the carrier owes the $7.5 million. The property was sold at auction for $2.9 million and thus the remainder left to recover is $4.6 million." Id.; Bank Exhibits, ECF No. 113-11, at 2.

On February 13, 2023, Javed filed a Complaint, on behalf of Charm, against GSICA in this Court. See Charm Hospitality LLC v. General Security Indemnity Company of Arizona, 2:25-cv-228, ECF No. 1. About eight months later, Javed moved to amend that complaint. Id. at ECF No. 23; Charm MPSJ to Javed, at 11. United States Magistrate Judge Brenda Wexler granted Javed's motion to amend the 2:23-cv-228 Complaint. See Charm Hosp., LLC v. Gen. Sec. Indem. Co. of

Arizona, No. 2:23-CV-00228-RFB-BNW, 2024 WL 2394668 at *4 (D. Nev. May 23, 2024). Magistrate Judge Wexler, granting the motion, reasoned that "that Charm should have known that the Bank was a necessary party to this proceeding." Id. Thus, the Bank was added to that action.

After a long litigation process, the parties met for a second mediation on December 17, 2024. During that mediation, Dhillon, on behalf of Charm, texted Javed. Charm MPSJ to Javed, ECF No. 109, at 12; Bank Exhibits, ECF No. 113-16, at 2-14. Within that conversation, Javed told Dhillon that GSICA's starting mediation position was $3,000,000 and Javed's starting position was $5,000,000. Bank Exhibits, ECF No. 113-16, at 2; Charm Exhibits, ECF No. 110-13, at 2. Javed later texted Dhillon that the case was going to settle for around $4,000,000. Bank Exhibits, ECF No. 113-16, at 2; Charm Exhibits, ECF No. 110-13, at 2. Continuing, Javed told Dhillon that Crawford would "talk[] to the bank [and] he'll know how much is [the Bank's] portion. Bank Exhibits, ECF No. 113-16, at 4; Charm Exhibits, ECF No. 110-13, at 3. Dhillon then messaged Javed "[o]ut of 4 mill You get 1.2 mill 600 k before You will get 1.8 mill 2.8 mill left for bank plus 3 mill from sale 1 mill from 1st ck, total 6.8 mill [Charm] get 0[.]" Bank Exhibits, ECF No. 113-16, at 7; Charm Exhibits, ECF No. 110-13, at 4. Javed responded by noting that the "first job [was] to get this settled with the insurance company" and once they did that, she would "work[] with [the Bank] so" Charm could get compensated as well. Bank Exhibits, ECF No. 113-16, at 8; Charm Exhibits, ECF No. 110-13, at 4. Dhillon insisted that Charm would not agree to the mediation unless Charm received $1,200,000. Bank Exhibits, ECF No. 113-16, at 12, 13; Charm Exhibits, ECF No. 110-13, at 6. Ultimately, the Bank and GSICA agreed to settle the insurance claim for $3,999,999.00. Bank Exhibits, ECF No. 113-14, at 2-4; see Charm MPSJ to Javed, ECF No. 109, at 2. The Bank and GSICA signed the agreement, but Charm did not. Bank Exhibits, ECF No. 113-14, at 2-4; see Charm MPSJ to Javed, ECF No. 109, at 2.

Two days after the settlement mediation, the Bank sent Charm a letter, noting that Charm owed the Bank $5,215,381.94. Bank Exhibits, ECF No. 113-15, at 2.

## II. PROCEDURAL HISTORY

Charm began this case, on February 11, 2025, by filing a Complaint. ECF No. 1. Charm,

in its Complaint, asserted seven claims for relief. Id. at 11-22. Those claims are: (1) Legal Malpractice as to Javed; (2) fraudulent misrepresentation as to Javed; (3) conversation as to all defendants; (4) unjust enrichment as to all defendants; (5) fraudulent misrepresentation and concealment as to the Bank; (6) declaratory relief as to the Bank; and (7) declaratory relief as to Javed. Id. at 11-22.

As to declaratory relief against the Bank, Charm specifically seeks a declaratory judgment form the Court regarding the Bank finding: the Bank "is barred from seeking any deficiency judgment against Charm pursuant to NRS 40.455 because [the Bank] did not commence a deficiency action against Charm within six months of the foreclosure date of June 8, 2022; [the Bank] has no further rights for payment . . . against Charm; and [the Bank] has no rights, title or interest in the insurance claims proceeds, as a loss payee or otherwise, which will be remitted by GSCIA pursuant to the settlement in . . . .2:23-cv-228[.]" Id., at 21-22.

As to declaratory relief against Javed, Charm specifically seeks a declaratory judgment confirming that "the contingency fee charged by Javed in the Joint Fee Agreement was excessive" and "unenforceable; Javid has forfeited any fees and any right to fees related to the insurance claim because Javed labored under a conflict of interest . . . ; Javed's attorney lien is invalid;" and "Javed must forfeit the $479,139.09 she has already received in fees and refund the same to Charm." Id. At 23.

The parties have now cross-moved for summary judgment. Charm moved for partial summary judgment as to Javed and the Bank. See ECF Nos. 108, 109. Javed and the Bank, instead, have moved for a full grant of summary judgment against Charm. ECF No. 112, 116. All parties responded and replied. ECF Nos. 122, 125, 128, 129, 132, 133, 135, 136.

## III. LEGAL STANDARD

A party is entitled to summary judgment when they demonstrate "that there is no genuine dispute of material fact and [they] are entitled to judgment as a matter of law" on their claim(s). See FED. R. CIV. P. 56(a); see also Hollis v. R&R Rests., 159 F.4th 677, 683 (9th Cir. 2025) (citation omitted). A fact is material if it "might affect the outcome of the suit under the governing

law." Eat Right Foods Ltd. v. Whole Foods Mkt., Inc., 880 F.3d 1109, 1118 (9th Cir. 2018) (quoting Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247 (1986)). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lerner & Rowe PC v. Brown Engstrand & Shely LLC, 119 F.4th 711, 717 (9th Cir. 2024) (quoting Anderson, 477 U.S. at 248). At this procedural posture, the Court is solely charged with determining "whether there is a genuine issue [of fact] for trial;" in other words, this Court will not "weigh the evidence" or make credibility determinations to resolve factual disputes, which are ultimately reserved for the factfinder in this case. See Eat Right Foods Ltd., 880 F.3d at 1118 (quoting Anderson, 477 U.S. at 249); see also Zetwick v. Cnty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted). In doing so, the Court "view[s] the evidence in the light most favorable to the nonmoving party and make[s] all reasonable inferences in favor of that party." Eat Right Foods Ltd., 880 F.3d at 1118 (citing Tolan v. Cotton, 572 U.S. 650, 660 (2014)).

Federal courts apply a two-step framework to review motions for summary judgment. First, this Court must decide whether the moving party has met their initial burden by "demonstrating the absence of a genuine issue of material fact." Hollis, 159 F.4th at 683 (citing Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986)). The nature of this initial showing varies depending on which party carries the ultimate burden of proof on a given claim. When the movant does, they "must come forward with evidence which would entitle [them] to a directed verdict if the evidence went uncontroverted at trial." Gillings v. Time Warner Cable LLC, 583 Fed.Appx. 712, 715 (9th Cir. 2014) (unpublished disposition) (quoting C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000)). When the moving party does not carry the ultimate burden of proof, they can merely "point[ ] out that there is an absence of evidence to support the nonmoving party's case." Lerner, 119 F.4th at 717–18 (citation omitted).

If the moving party meets their initial burden, the Court must decide whether the non-moving party "set forth, by affidavit or as otherwise specified in Rule 56, specific facts showing that there is a genuine issue for trial." Id. at 178 (citation omitted). It is well-settled that a party cannot defeat summary judgment by presenting "the mere existence of a scintilla of evidence;" in other words, "the non-moving party must do more than show there is some 'metaphysical doubt'

as to the material facts at issue." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (first citing Anderson, 477 U.S. at 252; then quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). Rather, "the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in [their] favor." Id. (citing Anderson, 477 U.S. at 252).

Finally, in reviewing the record, the Court relies on the Parties to "identify with reasonable particularity the evidence" they want it to consider. See Californians for Renewable Energy v. Cal. Pub. Utils. Comm'n, 922 F.3d 929, 936 (9th Cir. 2019) (citation omitted); see also FED. R. CIV. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."). This Court will not "scour the record in search of a genuine issue of triable fact," nor does it have to. See Californians for Renewable Energy, 922 F.3d at 936 (citation omitted); see also Schneider v. TRW, Inc., 938 F.2d 986, 990 n.2 (9th Cir. 1991) (citation omitted) (clarifying that a "[d]istrict court is under no obligation to mine the full record for issues of triable fact.").

## IV. DISCUSSION

The Court grants summary judgment, in its entirety, to Javed and the Bank. In Section A, the Court grants the Bank summary judgment as to Charm's declaratory relief claim against the Bank. In Section B, the Court grants Javed summary judgment as to Charm's legal malpractice claim and declaratory relief claim against Javed. In Section C, the Court grants Javed and the Bank summary judgment as to Charm's conversion claims. In Section D, the Court grants Javed and the Bank summary judgment as to Charm's unjust enrichment claims. In Section E, the Court grants Javed and the Bank summary judgment as to Javed's fraudulent misrepresentation and concealment claims.

### A. The Bank was and is entitled to all the insurance proceeds.

To determine whether the Bank is entitled to all the insurance proceeds, the Bank must prove that it is a loss payee with an insurable interest in the property and the foreclosure sale did not terminate its rights to the Hotel. Here, the Bank does so. As a result, the Court grants the Bank

summary judgment as to Charm's declaratory relief claim against the Bank.

Nevada courts "interpret an insurance policy from the perspective of one not trained in law or in insurance, with the terms of the contract viewed in their plain, ordinary and popular sense." Century Sur. Co. v. Casino W., Inc., 130 Nev. 395, 398 (Nev. 2014) (internal citation omitted). The policy must be read "as a whole to give reasonable and harmonious meaning to the entire policy." Id. (internal citations omitted). Finally, "an insurance policy's interpretation should not lead to an absurd or unreasonable result." Id. (internal citation omitted).

The parties seek a declaration from the Court as to whether the Bank was entitled to the insurance proceeds. But before answering the ultimate question, the Court must answer four underlying questions: (1) whether the Bank had an insurable interest; (2) when the Bank's right to the proceeds arose; (3) whether the foreclosure sale of the Hotel terminated that insurable interest, if the Bank had one; and (4) whether Nev. Rev. Stat. § 40.455 terminated Charm's debt to the Bank. The Court answers each of these questions in turn.

The Bank had an insurable interest in the Hotel. An insurable interest "means any actual, lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction or pecuniary damage or impairment." NEV. REV. STAT. § 687B.060(2). Under the policy "[t]he Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in [the Hotel] is established by such written instrument as . . . [m]ortgages, deeds of trust, or security agreements." Bank Exhibits, ECF No. 113-3, at 61. The insurance policy schedule lists the Bank as the Loss Payee. Id. at 60. The Hotel was also subject to a Deed of Trust and Promissory Note to which the Bank was the mortgagee. See Bank Exhibits, ECF Nos. 113-1, 113-2. Construing all facts in Charm's favor, the Court still finds it is undisputed that the Bank was a Loss Payee with an actual, lawful, and substantial economic interest in the Hotel. Thus, the Bank had an insurable interest. See Bank Exhibits, ECF No. 113-3, at 61.

Turning to the second question, the Bank's rights as a Loss Payee were triggered at the time of the loss. "After a loss has occurred the right of the assured to the indemnity becomes a fixed and vested right." Engleman v. Royal Ins. Co., Ltd., of Liverpool, England, 56 Nev. 319, 51

P.2d 417, 420 (Nev. 1935). Here, the loss (the water pipe bursting) occurred before the Bank sold the Hotel at the foreclosure auction. See Charm MPSJ to Bank, ECF No. 108, at 5, 6 (admitting that the pipe burst on February 24, 2022, and the foreclosure sale occurred on June 8, 2022). Based upon the timing of the accident and the sale, the Bank's rights as a loss payee triggered at the time of the pipe burst under the terms of the policy.

Charm's attempt to argue otherwise is meritless. First, the policy is not ambiguous as Charm contends. Section B of the policy notes that the insurance company "will not pay any Loss Payee more than their financial interest in the" Hotel. Bank Exhibits, ECF No. 113-3, at 61. But all this language means is that GSICA will not pay more than the debt Charm owes the Bank. See, e.g., Rosenbaum v. Funcannon, 308 F.2d 680, 685 (9th Cir. 1962) ("[o]f course, the situation would have been different if the loss-payable mortgagee, Rosenbaum had bid less for the property, as was her right. In such case, a deficiency balance of the debt would have remained for which she would have had an entitlement out of the insurance policy.").

Charm's next argument, that the Bank's interest is derivative, is belied by the policy. As the Bank correctly argues, Section C(3) notes that if GSCIA denies Charm's "claim because of [its] acts or because [it] [has] failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment" if other conditions are satisfied. Read harmoniously, the insurance policy provides the Loss Payee, here the Bank, with a discrete independent interest, not a derivative one. See Nat'l Union Fire Ins. Co. of State of Pa. v. Reno's Exec. Air, Inc., 100 Nev. 360, 364 (1984) (holding that insurance "polic[ies] must be read as a whole in order to give a reasonable and harmonious meaning and effect to all its provisions.").

Establishing that the Bank had an insurable interest, the Court must now determine whether the foreclosure sale of the Hotel terminated this interest by extinguishing Charm's underlying debt to the Bank. It did not. "[T]he extinguishment of a deed of trust by sale of the property at foreclosure does not necessarily extinguish the underlying debt, the debt remains only to the extent that it is unpaid." Callahan v. First Com. Title, Inc., 95 Nev. 441, 442, (Nev. 1979) (citing Rosenbaum, 380 F.2d at 684). In other words, "loss-payees may recover on an insurance policy after the deed of trust is extinguished at a trustee's sale as long as a portion of the debt remains."

Universal Mortg. Co. v. Prudential Ins. Co., 799 F.2d 458, 460–61 (9th Cir. 1986) (Clarifying Rosenbaum). Indeed, “if [the Bank] had an insurable interest at the time of issuing the policy and at the time of the loss, equal to the amount insured, [it] had a complete and absolute cause of action” for the insurance proceeds. Royal Ins. Co. of Liverpool v. Stinson, 103 U.S. 25, 26 L. Ed. 473 (1880)

The Court now turns to the final underlying question, whether the Bank’s failure to obtain a deficiency judgment under Nev. Rev. Stat. §40.455 extinguished the debt Charm owed to the Bank. The answer is no. Defendants correctly argue that the expiration of one legal remedy does not bar collection under different legal remedies. Bank MSJ, ECF No. 122, at 10. Indeed, “[t]he one-action rule ‘does not provide a complete affirmative defense to a separate personal action on the debt, wherever commenced,” because the one-action rule “does not excuse the underlying debt.’” See Hefetz v. Beavor, 133 Nev. 323, 327 (Nev. 2017) (quoting Bonicamp v. Vazquez, 120 Nev. 377, 382-83 (Nev. 2004)). Charm’s response, that Nev. Rev. Stat. § 40.459 is not Nevada’s one-action rule, misstates the relevant law. The text of Nev. Rev. Stat §40.430 states that actions taken for “the recovery of any debt or enforcement of any right secured by a mortgage or other lien upon real estate . . . must be in accordance with the provisions of [Nev. Rev. Stat §§] 40.430 to 40.459, inclusive.” NEV. REV. STAT §40.430. Charm’s position effectively rewrite’s Nev. Rev. Stat §40.430. Thus, this Court must reject that position.

The caselaw under Illinois law that Charm relies on is readily distinguishable. In that case, a federal district court, interpreting Illinois law, noted that the policy specifically noted that the insurance company would only “pay to the Loss Payee the whole principal on the debt plus an accrued interest.” Berkshire Hathaway Homestate Ins. Co. v. Chicago Metro. Hosp., LLC, 430 F. Supp. 3d 553, 555 (N.D. Ill. 2020) (internal citation omitted). That language allowed “Berkshire to reduce the [plaintiff’s] claim by the amount it ha[d] already been satisfied, even if the satisfaction occurred after the fire.” Id. at 558. That language, however, is nowhere to be found in this insurance policy, and this Court will not read that language in. But as a backstop, Berkshire Hathaway Homestate Ins. Co. does not create a categorical rule, as Charm argues, that all losses are determined at the time of payment. In fact, that court reasoned that “[t]he balance of the debt

at the time of the fire determines the amount recoverable by the mortgagee." Id. at 557 (internal quotation omitted). As a result, Charm's reliance on Berkshire Hathaway Homestate Ins. Co. is misplaced.

The Court finds upon the undisputed facts that the Bank is entitled to all of the insurance proceeds so long as they continue to be equal to or less than the amount owed to the Bank. Here, the insurance settlement amount is $3,999,999.00. Bank Exhibits, ECF No. 113-13, at 2. But Charm still owes the Bank $5,215,381.94. Bank Exhibits, ECF No. 113-15, at 2. Consequently, the Bank, as Loss Payee, is legally entitled to the insurance proceeds. Dhillon's message to Javed shows that he understood this: "[o]ut of 4 mill [Javed] get 1.2 mill 600 k before [Javed] will get 1.8 mill 2.8 mill left for bank plus 3 mill from sale 1 mill from 1st ck, total 6.8 mill [Charm] get 0[.]" Bank Exhibits, ECF No. 113-16, at 7; Charm Exhibits, ECF No. 110-13, at 4. He was correct. Charm was not owed anything from the insurance action. In fact, the text messages show that there was meant to be a separate negotiation between the Bank and Javed, on behalf of Charm, to determine how much money Charm would obtain. See ECF No. 113-16, at 8; Charm Exhibits, ECF No. 110-13, at 3. ("Our first job is to get this settled with the insurance company[.] Once we do that I am working with [the Bank] so you can get compensated too."). The Bank is entitled to the insurance proceeds.

The Court therefore grants the Bank summary judgment as to Charm's declaratory relief claim against the Bank. Specifically, the Court declares that the Bank is entitled to the amount of the insurance proceeds that are equal to or less than the remaining deficiency owed to the Bank and the Bank is a loss payee The Bank, however, cannot seek a deficiency judgment under NRS 40.455. That statue "requires that an application for a deficiency judgment be made within six months after the date of a foreclosure sale" Badger v. Eighth Jud. Dist. Ct., 132 Nev. 396, 402–03 (2016). Here, the Bank did not do so. It opted to obtain a judgment against Charm's sole owner, Param Kaur, for $8,205,562.98. Bank Exhibits, ECF No. 113-5, at 3. Thus it cannot now seek a deficiency judgment against Charm.

**B. Javed did not commit malpractice.**

The Court grants summary judgment to Javed as to Charm's legal malpractice claim. To

establish legal malpractice under Nevada law, a plaintiff must prove five elements: "(1) an attorney-client relationship; (2) a duty owed to the client by the attorney to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity possess in exercising and performing the tasks which they undertake; (3) a breach of that duty; (4) the breach being the proximate cause of the client's damages; and (5) actual loss or damage resulting from the negligence." Day v. Zubel, 112 Nev. 972, 976 (Nev. 1996). Here, as reasoned above, Charm's debt to the Bank is $5,215,381.94 and the insurance settlement amount is $3,999,999.00. Bank Exhibits, ECF No. 113-13, at 2. Thus, Charm, as Javed argues, has no legal or contractual right to the proceeds. Javed MSJ, ECF No. 116, at 25 ("Charm received nothing because its contractual rights under the [insurance policy] and corresponding Fee Agreement left nothing for Charm to receive"). And because the Court has found that Charm had and has no legal right to any of the insurance settlement proceeds. The Court need not reach the other factors of a malpractice claim as Charm cannot establish any damages from any alleged malpractice by Javed. The Court therefore grants Javed summary judgment as to Charm's legal malpractice claim.

The Court also grants summary judgment to Javed as to Charm's declaratory relief claim against Javed as that claim is a repeat of Charm's legal malpractice claim. Compare Complaint, ECF No. 1, at 22-23 with id. at 11-15. In particular, the Court declares that Javed was not under a conflict of interest because the scope of her representation, obtain the most money possible from GSICA, benefitted both clients. Likewise, the Court declares that Javed was not under a conflict of interest because Nev. Rev. Stat. 40.455 did not extinguish Charm's debt to the Bank. See Rosenabaum, 308 F.2d at 684. Finally, for the reasons stated, the Court declines to declare that the Joint Fee Agreement is invalid.

**C. There is no conversion by the Bank or Javed.**

Charm's claim for conversion must also be dismissed based upon the Court's findings as to its lack of entitlement to any of the settlement proceeds. cannot prove its conversion claim against Javid or the Bank. To establish conversion, plaintiffs must prove that the defendant wrongfully deprived the plaintiff of the plaintiff's property. Here, Charm cannot prove that either the Bank or Javed wrongfully deprived Charm of its right to ownership over the insurance proceeds

because Charm was not entitled to the insurance proceeds. Thus, the Court grants Javed and the Bank summary judgment as to Charm's conversion claim.

Conversion is '"a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights."' Blige v. Terry, 139 Nev. 607, 616 (Nev. 2023) (quoting Wantz v. Redfield, 74 Nev. 196, 198 (Nev. 1958)). "[C]onversion is sufficiently shown when an owner is deprived of their property by the wrongful act of another who assumes dominion over the property." Id. at 617 (citing Studebaker Bros. Vo. Of Utah v. Witcher, 44 Nev. 442, 462 (Nev. 1921). "However, conversion must 'be essentially tortious,' meaning it must be an unlawful act." Id. (quoting Wantz, 74 Nev. at 198).

Charm cannot establish conversion as to the Bank. Neither the January 2023 $1,597,130.33 insurance check nor the December 17, 2024, $3,999,999.00 insurance settlement is Charm's property. "A party does not exert wrongful dominion over property . . . where, as here, the court determines that the party was never required to transmit the property to anyone else." Nevada State Educ. Ass'n v. Clark Cnty. Educ. Ass'n, 137 Nev. 76, 86 (Nev. 2021). Therefore, the Court grants the Bank summary judgment as to Charm's conversion claim.

Charm likewise cannot establish conversion as to Javed. Charm argues that Javed unlawfully converted legal fees from the January 2023, $1,597,130.33 insurance check. See Complaint, ECF No. 1, at 16. But the waterfall provision explicitly stated that "after payment of attorney's fees and case expenses, all recoveries made in this case will be disbursed as such: (1) payment of expenses incurred by West Town Bank & Trust in the foreclosure and related legal proceedings, [c]urtailment of the principal balance of the loan, (3) [a]ccured interest, fees and costs[,] [and] (4) [a]ny remaining funds shall be payable to Charm Hospitality, LLC." Bank Exhibits, ECF No. 113-4 at 4; Charm Exhibits, ECF No. 110-12, at 5. In essence, Charm is suing Javed for following the revised joint fee agreement. But following the terms of a contract is not conversion. accord In re Klein, No. 2:11-BK-12718, 2014 WL 184734, at *4 (Bankr. C.D. Cal. Jan. 14, 2014) ("[a] mere contractual right of payment that was not honored, without more, does not constitute conversion."). Consequently, the Court grants Javed summary judgment as to

Charm's conversion claim.

**D. There is no unjust enrichment by the Bank or Javed.**

The Court grants summary judgment to the Bank and Javed as to Charm's unjust enrichment claims. "Unjust enrichment occurs when a plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for [them] to retain the benefit without payment of the value thereof." UnitedHealthCare Ins. Co. v. Fremont Emergency Servs. (Mandavia), Ltd, 29, 570 P.3d 107, 121, (Nev. 2025) (citation modified). "The doctrine of unjust enrichment . . . applies to situations where there is no legal contract, but where the person sought to be charged is in possession of money or property which in good conscience and justice, [they] should not retain but should deliver to another or should pay for." Leasepartners Corp. v. Robert L. Brooks Tr. Dated Nov. 12, 1975, 113 Nev. 747, 756, (1997) (citation modified). Here, the revised joint free agreement, a legal contract, exists, and that contract identified how the funds should be disbursed. See Bank Exhibits, ECF No. 113-4 at 4; Charm Exhibits, ECF No. 110-12, at 5. As a result, Charm cannot sustain an unjust enrichment clam against either party. See e.g., Baroi v. Platinum Condo. Dev., LLC, No. 2:09-CV-00671-PMP, 2012 WL 2847912, at *9-10 (D. Nev. July 11, 2012) (dismissing the plaintiff's unjust enrichment claims against two defendants because there was an express written contract between those defendants and the plaintiff).

**E. Javed cannot be held liable for fraudulent misrepresentation, and the Bank cannot be held liable for fraudulent misrepresentation and concealment.**

Charm cannot prove conversion or fraudulent misrepresentation. To prove both of those claims, plaintiffs must prove, among other things, a false representation and damages. Here, Charm cannot prove either. The Court therefore grants summary judgment to the Bank and Javed.

To prove fraudulent misrepresentation, plaintiffs must prove: "(1) [a] false representation made by the defendant; (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and (4)

damage to the plaintiff as a result of relying on the misrepresentation." Barmettler v. Reno Air, Inc., 114 Nev. 441, 447 (Nev. 1998).

The Court rejects Charm's fraudulent misrepresentation claim, because the alleged misrepresentation is not false. Charm alleges that Javed advised Charm that the Bank was a necessary party to the insurance claim litigation. Javed's statement, that the Bank was a necessary party, is not a false representation because it is true. As Judge Weksler previously found, the Bank is necessary party. Charm Hosp., LLC v. Gen. Sec. Indem. Co. of Arizona, No. 2:23-CV-00228-RFB-BNW, 2024 WL 2394668 at *4 (D. Nev. May 23, 2024). And there can be no fraudulent misrepresentation when a true statement is given. See, e.g., Guilfoyle v. Olde Monmouth Stock Transfer Co., 130 Nev. 801, 811-12, (Nev. 2014) (finding no negligent misrepresentation when there is no false statement). Construing the facts in the light most favorable to Charm, it cannot prove that Javed made a false representation. And because the Court finds that there is no false representation, the first element of fraudulent misrepresentation, it necessarily finds that there is no fraudulent misrepresentation. See, e.g., Noonan v. Bayview Loan Servicing, LLC., 2019 WL 1552690 at *1 (Nev. 2019) ("Summary judgment was appropriate on the negligent misrepresentation claim because Hampton neither made an affirmative false statement nor omitted a material fact it was bound to disclose.") To end, the Court grants Javed summary judgment as to the Charm's fraudulent misrepresentation claim.[3]

The Court rejects Charm's attempt to separate the alleged misrepresentation into two parts—the representation that the Bank is a necessary party and the representation that GSCIA 'demanded' that the bank be added as a necessary party. The Court rejects this as a distinction without a difference. The damage that Charm is alleging for both so-called misrepresentations is the addition of the Bank to the insurance claim and the negative impact on the Bank from this addition. The Court thus finds this Charm's attempt to create two separate theories of liability as specious. Whether GSICA told Javed to add the Bank as a necessary party or whether Javed, on her own, decided the Bank was a necessary party, the practical effect is that the Bank was added

---

[3] As Javed correctly notes, all of Charm's fraudulent misrepresentation theories begin the Bank not being a necessary party. See Complaint, ECF No. 1, at 15-16. Thus, the Court need not address any other fraudulent misrepresentation theories because they all fail.

to the insurance claim. Charm's entire argument is that the Bank should not have been added to the insurance claim because Charm did not owe the Bank a deficiency—but it did. See, e.g., Charm MPSJ to Javed, ECF No. 109, at 20 ("As a matter of law NRS §40.455 precludes [the Bank] from obtaining any deficiency against Charm[.]"). The Court therefore finds that the alleged fraudulent statement is Javed's purported advisement that the Bank is a necessary party to the insurance action. In this case, the bank was a necessary party.

The Court also rejects Charm's secondary fraudulent misrepresentation argument. Allegations of fraud must be pled with heightened specificity. *See* NRGP 9(b) (requiring allegations of fraud be pleaded with specificity). But here, as Javed correctly argues, Charm never alleged in its Complaint that Javed told Charm that the first joint representation agreement and the revised joint representation agreement were the same fee agreement. See generally Complaint, ECF No. 1. This Court will not allow Charm to inject a new theory, in its response, to defeat Javed's summary judgment motion. Accord Dream Games of Ariz., Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir. 2009) (reasoning that arguments that are "not specifically and distinctly argued in [the] opening brief" are waived.).

The Court now turns to the Bank's summary judgment motion as to Charm's fraudulent misrepresentation and concealment claim. Charm argues that the Bank fraudulently misrepresented that the Bank, Utah Bank, and the United States Department of Agriculture owned the loan. Complaint, ECF No. 1, at 18. And because of that fraudulent misrepresentation, Charm was injured. Id. at 19. Charm's claims on this score are meritless because Charm cannot prove damages. Indeed, Charm does not even try to show how it was harmed. See id.; Charm Response to Bank, ECF No. 128, at 19. At bottom, Charm cannot show it was harmed even assuming everything Charm alleges is true. As a result, the Court grants summary judgment to the Bank as to Charm's fraudulent misrepresentation and concealment claims.[4]

---

[4] The Court can grant summary judgment on the concealment claim because fraudulent concealment claims, like fraudulent misrepresentation claims, require plaintiffs to prove, among other things, that "as a result of the concealment or suppression of the fact, the plaintiff sustained damages." Leigh-Pink v. Rio Props., LLC, 138 Nev. 530, 533 (Nev. 2022). And for the reasons discussed above, Javed cannot prove damages.

## V. CONCLUSION

**IT IS HEREBY OREDERD** that Charm's motion for partial summary judgment as to West Town Bank & Trust (ECF No. 108) is **DENIED IN ITS ENTIRETY.**

**IT IS FURTHER ORDERED** that Charm's motion for partial summary judgment as to Javed (ECF No. 109) is **DENIED IN ITS ENTIRETY**.

**IT IS FURTHER ORDERED** that West Town Bank & Trust's motion for summary judgment as to (ECF No. 112) is **GRANTED IN ITS ENTIRETY**

**IT IS FURTHER ORDERED** that Javed's motion for summary judgment as to (ECF No. 116) is **GRANTED IN ITS ENTIRETY**

**IT IS FURTHER ORDERED** that all other pending motions and/or objections are **DENIED as MOOT**.

**IT IS HEREBY DECLARED** that the Bank is **NOT** entitled to seek a deficiency judgment against Charm under Nev. Rev. Stat. 40.455, the Bank has rights to payments against Charm in the amount of the remaining deficiency, and the Bank is a loss payee under the insurance policy.

**IT IS FURTHER DECLARED** that the Joint Fee Agreement is not unenforceable, Javed has not forfeited any right to fees because there was no conflict of interest, Javed's attorney's lien is not invalid, and Javed need not forfeit the $479,139.09 she has received in fees.

The Clerk of Court is instructed to enter Judgment and close this case.

**DATED:** September 30, 2026.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**